UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW MURPHY, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 4566 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| ROCIO SALGADO, ROBERT LONG, and THE CITY OF CHICAGO, | ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Andrew Murphy brought this suit against the City of Chicago and Chicago Police Officers Rocio Salgado and Robert Long, alleging claims under 42 U.S.C. § 1983 for excessive force, unreasonable seizure (*i.e.*, false arrest), and failure to intervene, and claims under Illinois law for battery, false imprisonment, malicious prosecution, willful and wanton conduct, and indemnification. Doc. 1-1. Defendants have moved to dismiss the federal unreasonable seizure claim, the state law false imprisonment claim, and the state law willful and wanton claim. Doc. 18. The motion is granted in part and denied in part.

The allegations of the complaint pertinent to the motion are as follows. In the early afternoon of June 9, 2012, Murphy was riding his bicycle on a sidewalk in the City of Chicago. Doc. 1-1 at ¶ 8. An unmarked Chicago Police Department vehicle driven by Salgado and Long, "suddenly and without warning, pulled onto the curb in front of [Murphy] and at least one officer exited the vehicle." *Id*. at ¶ 9. When Murphy rode his bicycle "into the street to avoid contact with the police officer," "a different, marked Chicago Police Department squad car … was stopped facing northbound" on the street. *Id*. at ¶¶ 9-10. "The marked squad vehicle, without provocation or cause, suddenly and without warning, turned toward [Murphy], accelerated

1

toward [Murphy], and struck [Murphy] on two occasions, forcing him to fall to the ground." *Id*. at ¶ 11. The officers then arrested Murphy, took him into custody, and charged him with resisting a police officer and other offenses. *Id*. at ¶¶ 12, 15. The charges were dismissed, with the exception of the charge that Murphy violated the Chicago Municipal Code by riding a bicycle on the sidewalk. *Id*. at ¶ 17.

Murphy's federal unreasonable seizure claim is properly characterized as a Fourth Amendment false arrest claim. *See Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649, 655 (7th Cir. 2012) ("'False arrest' is shorthand for an unreasonable seizure prohibited by the Fourth Amendment."). Defendants argue that the false arrest claim should be dismissed because the officers had probable cause to believe that Murphy was violating the Chicago Municipal Code by riding his bicycle on the sidewalk. Doc. 18 at 2-4. Defendants are correct that the officers had probable cause to believe that Murphy was violating the Chicago Municipal Code—Murphy admits in his complaint that he was riding his bicycle on the sidewalk, Doc. 1-1 at ¶ 8, and riding a bicycle on the sidewalk violates the Code, *see* Chi. Mun. Code § 9-52-020. In *Atwater v. City of Lago Vista*, 532 U.S. 318 (2001), the Supreme Court held that so long as an officer has probable cause to believe that an individual "has committed even a very minor criminal offense in his presence," the officer may arrest the individual without violating the Fourth Amendment. *Id*. at 354. So, Defendants conclude, *Atwater* defeats Murphy's Fourth Amendment false arrest claim.

In response, Murphy argues that *Atwater* does not apply because riding a bicycle on a sidewalk is not a jailable offense, as the maximum penalty that the Code specifies for the offense is a small fine. Doc. 22 at 3-5. Murphy's argument cannot be reconciled with *Atwater*, which expressly rejected the argument that "nonjailable traffic offenses" should fall outside the scope

of its holding. 532 U.S. at 349. The Seventh Circuit confirmed the point in *Thomas v. City of Peoria*, 580 F.3d 633 (7th Cir. 2009), holding that "the Fourth Amendment does not forbid an arrest for a 'nonjailable' offense," and adding that "[e]ven arrests for violations of purely civil laws are common enough, and usually unexceptionable—examples that spring to mind are arrests for civil violations of the immigration laws (such as overstaying a visa) and for civil contempt." *Id*. at 638. It follows that Murphy's Fourth Amendment false arrest claim must be dismissed.

The court notes that Defendants have not moved to dismiss Murphy's excessive force claim, which alleges that the *manner* of his arrest violated the Fourth Amendment. Any such motion would have been denied. "The existence of probable cause is necessary but not sufficient for an arrest to be reasonable; the reasonableness of an arrest depends both on its justification *and* the manner in which it was effectuated." *Gutierrez v. Kermon*, 722 F.3d 1003, 1008 (7th Cir. 2013) (emphasis added); *see also United States v. Watson*, 558 F.3d 702 (7th Cir. 2009) ("There are cases in which, although the police have every right to … arrest a person …, the manner in which they do so violates the Fourth Amendment. The usual case is that of the use of excessive physical force to effect an arrest."). "The nature and extent of the force that may reasonably be used to effectuate an arrest depends on the specific circumstances of the arrest, including 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Murphy plausibly alleges that the manner of his arrest, being stricken twice with a police car, violated the Fourth Amendment in light of the relatively non-serious nature of his infraction. *See Abbott v. Sangamon Cnty.*, 705 F.3d 706, 730

(7th Cir. 2013) (collecting cases); *Austin v. Fornoff*, 2011 WL 4738316, at *7 (N.D. Ill. Sept. 30, 2011) (holding that the plaintiff, who alleged that he "was struck eight to nine times in the back of the head and punched in the eye … after being handcuffed" while "being apprehended in response to a seatbelt checkpoint," stated a viable Fourth Amendment claim).

Murphy's false imprisonment claim is the state law analog to his Fourth Amendment false arrest claim, and it fails as well. "Probable cause is an absolute bar to a claim for false imprisonment." *Poris v. Lake Holiday Property Owners Ass'n*, 983 N.E.2d 993, 1007 (Ill. 2013); *see also Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 626 (7th Cir. 2010) ("Lack of probable cause is a common element of the Illinois claims of false arrest, false imprisonment, and malicious prosecution."). As noted above, the officers had probable cause to believe that Murphy violated the Code by riding his bicycle on the sidewalk. And the Code expressly provides that Chicago police officers have power to arrest for any violation of the Code. *See* Chi. Mun. Code § 2-84-230 ("The members of the police department shall have power … to arrest or cause to be arrested, with or without process, all persons who … are found violating any municipal ordinance"); *Williams v. Jaglowski*, 269 F.3d 778, 783-84 (7th Cir. 2007) (citing § 2-84-230 for the proposition that "the Chicago Municipal Code … specifies that Chicago police officers have the power to arrest for any violation of the Code"). Murphy's false imprisonment claim accordingly fails as a matter of law. *See Jackson v. Parker*, 627 F.3d 634, 638 (7th Cir. 2010) (holding that probable cause to arrest the plaintiff under the Chicago Municipal Code defeated the plaintiff's false arrest claim); *Haywood v. City of Chicago*, 378 F.3d 714, 717 (7th Cir. 2004) (same).

Finally, Defendants argue that Murphy's willful and wanton claim should be dismissed because there is no such tort under Illinois law. Doc. 18 at 4-5. Defendants are correct that

"[t]here is no separate and independent tort of 'willful and wanton' misconduct." *Ziarko v. Soo Line R.R.*, 641 N.E.2d 402, 406 (Ill. 1994); *see also Drakeford v. Univ. of Chi. Hosps.*, 994 N.E.2d 119, 126 (Ill. App. 2013) (same). However, as the Supreme Court of Illinois recently explained, "willful and wanton conduct is regarded as an aggravated form of negligence," and "[i]n order to recover damages based on willful and wanton conduct, a plaintiff must plead and prove the basic elements of a negligence claim—that the defendant owed a duty to the plaintiff, that the defendant breached that duty, … that the breach was a proximate cause of the plaintiff's injury," and that the defendant had "a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 973 N.E.2d 880, 887 (Ill. 2012) (citation omitted); *see also Doe-2 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 593 F.3d 507, 514 (7th Cir. 2012); *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010); *Perez v. Town of Cicero*, 2011 WL 4626034, at *9 (N.D. Ill. Sept. 30, 2011). Accordingly, Murphy's willful and wanton claim will be deemed to be the type of aggravated negligence claim recognized by Illinois law. And because Defendants offer no other reason to dismiss the claim—aside from an argument that it duplicates Murphy's other claims, which is premature on the pleadings and may be renewed either at summary judgment or prior to trial—the claim survives dismissal.

To summarize, the Fourth Amendment false arrest claim and the state law false imprisonment claim are dismissed, while the state law "willful and wanton" claim, reframed as an aggravated negligence claim, may proceed.

January 13, 2014                                   _____
                                                    United States District Judge